**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| COASTAL ELECTRICAL CONSTRUCTION, LLC,<br><br>                              Plaintiff,<br>         v.<br><br>KENNETH JERNIGAN and LINECO, LLC,<br><br>                              Defendants. | **Civil Action No.** |

## COMPLAINT

Plaintiff Coastal Electrical Construction, LLC ("Coastal"), files this Complaint for injunctive relief and damages, including punitive damages and attorneys' fees, against Defendants Kenneth Jernigan ("Jernigan") and Lineco, LLC ("Lineco," collectively with Jernigan, the "Defendants").

## INTRODUCTION

1.     This action arises from Defendants' calculated scheme to unlawfully compete with Coastal in violation of binding contractual covenants and fiduciary duties.

2.     Before selling Coastal in August 2020, Jernigan formed Lineco which later acted as the vehicle to sell Coastal to Bartlett Holdings, Inc. ("Bartlett").

3.     Jernigan signed a Membership Interest Purchase Agreement (the "Purchase Agreement") as a Seller Party, expressly acknowledging Coastal's goodwill, trade secrets, and customer relationships, and agreeing to comprehensive non-compete, non-solicitation, and confidentiality covenants.

4.     Immediately after the sale, Jernigan remained in an executive, senior management role at Coastal, giving him continued access to confidential information, key customers, and employees.

5.     He reaffirmed his restrictive covenants again in a Separation Agreement and General Release ("Separation Agreement") when his employment ended with Coastal in 2023.

6.     Despite these covenants, Jernigan, unbeknownst to Coastal, secretly operated and expanded Lineco as a competing contractor while still serving as an executive at Coastal, using Coastal's assets, employees, and confidential data to solicit customers and suppliers.

7.     Jernigan and Lineco's misconduct escalated after Jernigan's resignation in August 2023, with his repeated solicitations of Coastal's customers and employees, false statements to third parties designed to undermine Coastal's goodwill, and ongoing misappropriation of Coastal's trade secrets.

8.     Coastal issued multiple cease-and-desist letters, which Jernigan ignored.

9.     Defendants' unlawful actions have diverted business, disrupted customer relationships, damaged Coastal's goodwill, and caused significant financial loss.

10.    Coastal now seeks injunctive relief to enforce the restrictive covenants, recover damages for Defendants' breaches and tortious acts, and prevent further irreparable harm to its business.

**PARTIES**

11.    Plaintiff Coastal is an industry leader in North America's utility and infrastructure sector providing services including utility construction, installation, maintenance, and emergency restoration.

2

12.    Coastal is a for-profit limited liability company organized under the laws of the State of Florida, with its principal place of business at 1700 W. Main Street, Suite 400, Pensacola, FL 32502.

13.    Defendant Kenneth Jernigan is a former executive of Coastal who, upon information and belief, resides in Andalusia, Alabama.

14.    Defendant Lineco is a limited liability company organized in Florida with its principal place of business in Flomaton, Alabama.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Coastal alleged a claim under the Federal Defend Trade Secrets Act, and the remaining claims are sufficiently related thereto.

16.    This Court is the proper venue for this action pursuant to the forum selection clause contained in Section 8.4 of the Membership Interest Purchase Agreement and Section 8.4 of the Separation Agreement further described below.  Each agreement provides that the jurisdiction for any dispute arising under each agreement lies in the United States District Court for the District of Delaware.

17.    This Court has jurisdiction over Lineco because Lineco contractually agreed to resolve disputes in this Court in Section 8.4 of the Membership Interest Purchase Agreement.

18.    This Court has jurisdiction over Jernigan because Jernigan contractually agreed to resolve disputes in this Court in Section 8.4 of the Membership Interest Purchase Agreement and Section 8.4 of the Separation Agreement.

## FACTUAL ALLEGATIONS

**A.    Jernigan created Coastal and Lineco to compete in the utility industry.**

19.    Jernigan founded Coastal in approximately 2014.

3

20.    In 2020, Jernigan created Lineco as a Limited Liability Company.

21.    Jernigan and his wife have acted as co-owners of Lineco from its inception.

22.    Both Coastal and Lineco are general contractors, primarily engaged in the electric utility industry.

23.    In or around August 2020, Jernigan, his wife, and Lineco (through Jernigan), executed a Membership Interest Purchase Agreement to sell Coastal to Bartlett.[1]

24.    Following the sale, Jernigan retained an executive role in Coastal as its President and led Coastal under Bartlett's ownership.

**B.    The Purchase Agreement precluded Defendants from competing with Coastal or soliciting Coastal agents; any breach of these terms extended the restricted period.**

25.    In the Purchase Agreement, Defendants are subject to restrictive covenants, including non-compete and non-solicitation provisions.

26.    In the Purchase Agreement, Defendants acknowledged that each "is familiar with and has access to the Company's and the Business'[s] trade secrets and other Confidential Information, goodwill and other legitimate business interests. . . [Defendants] acknowledge[ ] and agree[ ] that . . . the Company, would be irreparably damaged if such Person were to breach any such covenants, and that any such breach by any [Defendant] would result in a significant loss of goodwill."  Exhibit A, ¶ 6.4.

27.    Defendants further acknowledged that "the covenants contained in Section 6.4 are necessary to protect the goodwill, Confidential Information, trade secrets and other legitimate business interests of [Coastal]."  *Id.*, ¶ 6.4(e)(i).

---

[1] Relevant excerpts of the Purchase Agreement are attached as Exhibit A.  Coastal is defined as the "Company" in the Purchase Agreement.

28.    In the Purchase Agreement, Defendants agreed that, for a period of five (5) years from the closing date of August 2020,[2] they would not and would cause their Affiliates "not to, directly or indirectly, participate in any manner in any business that engages in or is or may reasonably be considered to be competitive with all or any portion of the Business in any geographic area in which the Business is conducted or in active planning to be conducted as of the Closing Date." *Id.*, ¶ 6.4(a).

29.    In the Purchase Agreement, Defendants further agreed that for a period of five (5) years from the closing date of August 2020, they would not and would cause their "Affiliates not to, directly, or indirectly through another Person . . . call on, solicit or service any Person that is, or was during the twelve (12)-month period immediately preceding the Closing Date, a customer, client, vendor, supplier, licensee, licensor or other business relation of the Business in order to induce or attempt to induce such Person to cease doing or decrease their business with the Company, Buyer or any of their respective Affiliates . . . or seek to persuade any such customer, client, vendor, supplier, licensee or other business relation . . . to conduct with anyone else any business or activity which such business relation conducts, or such prospective business relation could conduct, with the Company, Buyer, or any of their respective Affiliates." *Id*., ¶ 6.4(b)(ii).

30.    The Purchase Agreement requires that Defendants "keep confidential, not use, not disclose, and take commercially reasonable efforts to prevent the disclosure of, any Confidential Information . . ." *Id.*, ¶ 6.4(d).

---

[2] The Restrictive Period is defined as "a period of five (5) years following the Closing Date." Exhibit A, p. 13.

31.     "Confidential Information" is defined as "any confidential or proprietary information related to the Business, the Assets or the Company, including . . . . customer and client lists, and customer and client information . . ." *Id.*

32.     Defendants each agreed that "the Restricted Period appliable to any [Defendant] shall be tolled, and shall not run, during the period of any breach by such Person of any term of provision of Section 6.4(a) or Section 6.4(b)." *Id.*, ¶ 6.4(e)(vi).

33.     Pursuant to the Purchase Agreement, Coastal is "entitled to seek an injunction, specific performance and other equitable relief to prevent or address any breach or threatened breach by any Seller Party of any term or provision of Section 6.4(a), Section 6.4(b), Section 6.4(c) or Section 6.4(d)[.]" *Id.*, ¶ 6.4(e)(v).

**C.    In violation of the Purchase Agreement and his fiduciary duties, Jernigan worked at both Lineco and Coastal after the sale.**

34.     From the sale of Coastal in August 2020 until his resignation on August 8, 2023, Jernigan held an executive role at Coastal with authority over operations, staffing, and strategic decisions.  Jernigan was in charge of Coastal's operations.

35.     At all relevant times, Jernigan (i) continued working for Coastal; (ii) retained significant authority over day-to-day operations and personnel matters; (iii) exercised control over key projects and customer relationships; and (iv) remained bound by the covenants and obligations in the Purchase Agreement throughout his tenure.

36.     Jernigan also regularly represented to customers, suppliers, and employees that he remained in a position of authority with Coastal.

37.     Through his executive role, Jernigan had unrestricted access to Coastal's confidential and proprietary business information, including customer identities, pricing, bidding strategies, operational plans, and new development strategies for the company's customers.

38.    Jernigan received ongoing reports and internal updates giving him full visibility into Coastal's financial performance and business pipeline.

39.    As an executive of Coastal, Jernigan also participated in internal strategic discussions, long-term planning, and evaluations of potential market expansions.

40.    Jernigan was also required to comply with the company's Code of Ethics which specifically addresses conflicts of interest: "A conflict of interest exists whether the personal interests, activity, investment or association of a [company] employee are inconsistent with the responsibility of his or her employment or position. A loss to the Company need not occur for a conflict to exist. All employees, including Executives/Managers, must disclose any potential for a conflict of interest regarding their position within [the company].  If you are unsure of whether you have a conflict of interest, please contact Human Resource."[3]

41.    On August 8, 2023, Jernigan resigned from Coastal.

42.    On August 17, 2023, Jernigan entered a Separation Agreement. *See* Exhibit B. [4]

43.    In the Separation Agreement, Jernigan acknowledged that he "had access to and contact with the trade secrets and confidential and proprietary business information of the Company during [his] employment. . ." *Id.*, ¶ 5.1.

44.    Jernigan agreed "not, use or disclose to any person or entity, any Confidential Information . . . whether directly or indirectly, for [his] own benefit or for the benefit of another." *Id.*

45.    The Separation Agreement defined "Confidential Information" to include customer lists and data, among other proprietary information. *Id.*

---

[3] A true and correct copy of the Conflict of Interest policy is attached hereto as Exhibit C.
[4] Relevant excerpts of the Separation Agreement are attached as Exhibit B.

46.    The Separation Agreement also contained a "Reaffirmation of Restrictive Covenants," reaffirming the Purchase Agreement's non-competition, non-solicitation, and confidentiality covenants in Section 6.4.  *See id.*, ¶ 5.5.

47.    Jernigan also agreed that, for an additional two (2) year period following his Separation Agreement, he would not "directly or indirectly solicit, hire or otherwise encourage any employee, customer, agent, or independent contractor, with whom [he] had material contact with during his employment with [Coastal], to change, cease or terminate any relationship with [Coastal]." *Id.*

**D.    While employed by Coastal, Jernigan competed with Coastal and misused its Confidential Information.**

*(i)    Competing while still employed by Coastal*

48.    While still employed at Coastal, Jernigan continued to secretly operate his competing company, Lineco, in ongoing violation of his contractual and fiduciary duties to Coastal.

49.    Coastal and Lineco are competitors in the electric utility sector. They both compete for overlapping customers and projects.

50.    After Jernigan's resignation, Coastal learned that Lineco performed work for customers in Coastal's service territory during Jernigan's employment and continued to do so throughout his restrictive period.

51.    Jernigan knowingly concealed Lineco's operations from Coastal's leadership and failed to disclose conflicts of interest, frustrating Coastal's ability to protect its customer base.

52.    Jernigan operated Lineco while serving as a Coastal executive, knowing his conduct violated his contractual obligations.

### (ii)    *Misusing Coastal assets and confidential information*

53.    Jernigan used Coastal's resources, employee time, and labor for Lineco's operations.

54.    Jernigan also utilized Coastal's assets and confidential information to compete with Coastal in the marketplace.

55.    The confidential information included, among other things, Coastal's customer information, customer relationship management processes, bidding information and strategies, pricing information and strategies, proposal templates, financial information and strategies, operational plans, and developmental information and strategies.

56.    Coastal undertook and maintained reasonable efforts to limit access to, and maintain the secrecy of, this information and other proprietary and trade secret information.  For example, Coastal password-protected its confidential information before allowing access. Coastal also required employees to sign agreements that contain restrictive covenants and confidentiality provisions protecting Coastal's confidential and proprietary information.

57.    Coastal derives actual or potential economic value from the secrecy of this information and other proprietary and trade secret information because it drives Coastal's business strategies and competitive advantage in the market.

58.    Upon information and belief, Lineco knowingly received and used Coastal's confidential information and assets that Jernigan took from Coastal.

59.    Jernigan continued to use Coastal's confidential information after his resignation to identify, target, and solicit Coastal's customers, vendors, and other business relationships.

*(iii)*    ***Soliciting Coastal customers and suppliers during and after his employment***

60.    Coastal has learned that during his employment with Coastal and during his restrictive period, Jernigan solicited Coastal's customers and suppliers on behalf of Lineco.

61.    On or before May 24, 2023, Jernigan contacted and met with a representative of Coastal customer Georgia Power to discuss working with a diverse supplier and Lineco signed a Master Service Agreement.  At this time, Jernigan knew that Georgia Power was prepared to enter into a business relationship with Coastal.

62.    Upon information and belief, Jernigan did not significantly act on his Master Service Agreement by performing services with Georgia Power until recently.

63.    Upon information and belief, Defendants caused other former Coastal employees, utilizing Jernigan's and their own confidential information from Coastal, to participate in Lineco's solicitation of Coastal' s customers for Defendants' benefit.

64.    Upon information and belief, Defendants also held multiple meetings with Coastal customers on behalf of Lineco, for Defendants' benefit.

65.    Upon information and belief, Lineco, through Jernigan, approached suppliers doing business with Coastal to secure better terms or to redirect business to Lineco.

66.    These solicitations included leveraging Coastal's pricing structures, service capabilities, and customer preferences.

67.    Upon information and belief, Jernigan made false or misleading statements about Coastal's services to persuade customers to move business to Lineco and undermine Coastal's goodwill.

68.    Upon information and belief, Defendants targeted high-value contracts that Jernigan knew were critical to Coastal's strategic objectives and were at risk of being lost while Jernigan was bound by restrictive covenants.

69.    By using Coastal's confidential information in this manner, Jernigan enabled Lineco to compete directly against Coastal.

70.    Upon information and belief, Defendant Lineco engaged in business operations competitive to Coastal since the sale in 2020, but prominently in the last few months of his restrictive period.

### (iv)    *Soliciting Coastal employees*

71.    Around the time of his resignation, Jernigan caused four crews, totaling over ten (10) employees, worth of Coastal employees to terminate their employment with Coastal to join a competing contractor.

72.    In recent months, during his restrictive period, Jernigan has again poached multiple Coastal employees, in violation of his restrictive covenants.

73.    Upon information and belief, Jernigan targeted employees in key operational roles.

74.    Jernigan recently admitted to Coastal that current or former Coastal employees were assisting at his facility.

75.    Jernigan recently admitted to Coastal that he would advertise for employees and that he would not exclude Coastal or Coastal employees from applying.

76.    Upon information and belief, Jernigan acted on behalf of and in concert with Lineco, which benefited from and participated in the solicitation of Coastal employees.

*(v)*    ***Ongoing Violations of Jernigan's Agreements***

77.    Jernigan's and Lineco's misconduct occurred while the restrictive covenants in both agreements remained in full force and enforceable.

78.    On July 30, 2025, Coastal sent Jernigan a cease-and-desist letter.

79.    The following week, Coastal met with Jernigan via telephone on August 7, 2025.

80.    During the call, Coastal reiterated that the restrictions remained in effect through August 28, 2025, and that his solicitation of Coastal employees violates both his agreements.

81.    Jernigan admitted speaking with former employees of Coastal.

82.    Upon information and belief, Jernigan and Lineco's misconduct continued despite notice from Coastal while the restrictive covenants in both agreements remained in effect. Jernigan planned to declare himself "back in business" on August 11, 2025, which he later postponed to August 28, 2025, when he believed his restrictions expired.

83.    Due to his unlawful conduct, Defendants' restrictive covenants have been tolled and extended pursuant to Section 6.4 of the Purchase Agreement.

**E.    Defendants' misconduct irreparably harmed Coastal.**

84.    Upon information and belief, at least one Coastal customer solicited by Jernigan and/or Lineco had an active contract with Coastal that was disrupted or terminated.

85.    As a direct result of Defendants' misconduct, Coastal suffered significant financial losses as well as direct negative impact on Coastal' s goodwill and reputation in the market.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**
**(FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ.)**

**(ALL DEFENDANTS)**

86.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

12

87.    Defendants knowingly acquired, used, and/or disclosed Coastal's trade secrets, without authorization and in violation of their contractual and fiduciary duties.

88.    The trade secrets included, among other things, Coastal's customer information, customer relationship management processes, bidding information and strategies, pricing information and strategies, proposal templates, financial information and strategies, operational plans, and developmental information and strategies.

89.    Jernigan knew Coastal considered this confidential information a trade secret.

90.    Defendants had access to this confidential information through Jernigan's executive role with Coastal and used it for their benefit in operating Lineco, directly competing against Coastal.

91.    As a result of Defendants' misappropriation, Coastal has suffered significant financial harm including lost contracts, the erosion of Coastal's customer base, and remedial costs to counteract the misappropriation.

92.    As a result of Defendants' misappropriation, Coastal has also suffered ongoing damage to its reputation, market position, and competitive advantage.

93.    Coastal has suffered and continues to suffer irreparable harm due to Defendant's unlawful actions.  Coastal is entitled to injunctive relief to prevent further violations of the Federal Defend Trade Secrets Act.

## COUNT II
## BREACH OF CONTRACT (PURCHASE AGREEMENT) – NON-COMPETE

### (ALL DEFENDANTS)

94.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

95.     Pursuant to the Purchase Agreement entered between Coastal and Defendants, each Defendant is prohibited from competing with Coastal for a Restricted Period of five (5) years following the sale. *See* Exhibit A, p. 13.

96.     The non-compete provision of the Purchase Agreement is valid and enforceable.

97.     The non-compete provision of the Purchase Agreement is reasonable with respect to its duration, scope, and the line of business covered by the restriction.

98.     The non-compete provision is reasonably calculated to protect Coastal's legitimate business interests which include, but are not limited to, Coastal's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

99.     During his employment with Coastal and following his termination of employment with Coastal, Jernigan has engaged in various forms of competition with Coastal that are prohibited under the non-compete provision of the Purchase Agreement.

100.    Upon information and belief, Defendant Lineco has also engaged in business competitive to Coastal in violation of the non-compete provision of the Purchase Agreement.

101.    Defendants' wrongful competition with Coastal constitutes a breach of the Purchase Agreement.

102.    Defendants acknowledged that breach of their contractual obligations results in irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law. *See* Exhibit A, ¶ 6.4(e).

103.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

104.    As a result of the breach of the Purchase Agreement, Coastal has also suffered damages in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT (PURCHASE AGREEMENT) – NON-SOLICITATION
## (ALL DEFENDANTS)

105.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

106.    Pursuant to the Purchase Agreement entered into between Coastal and Defendants, Defendants are prohibited from, directly or indirectly, soliciting, encouraging, causing or attempting to cause any customer or vendor to cease or reduce their business with Coastal. *See* Exhibit A, ¶ 6.4(b)(ii).

107.    While employed by Coastal, Jernigan solicited, encouraged, caused, or attempted to cause Georgia Power to purchase services of his company Lineco.

108.    Defendants also repeatedly held multiple meetings with various Coastal customers and approached suppliers doing business with Coastal to secure better terms or to redirect business to Lineco.

109.    The customer non-solicitation provision of the Purchase Agreement is valid and enforceable.

110.    The customer non-solicitation provision of the Purchase Agreement is reasonable with respect to its duration, scope, and the line of business covered by the restriction.

111.    The customer non-solicitation provision is reasonably calculated to protect Coastal's legitimate business interests which include, but are not limited to, Coastal's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

112.    During his employment with Coastal and following his termination of employment with Coastal, Jernigan has engaged in various forms of customer solicitation that are prohibited under the customer non-solicitation provision of the Purchase Agreement.

113.    Jernigan's wrongful competition with Coastal constitutes a breach of the Purchase Agreement.

114.    Jernigan acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law.

115.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

116.    As a result of the breach of the Purchase Agreement, Coastal has also suffered damages in an amount to be determined at trial.

### COUNT IV
### BREACH OF CONTRACT (PURCHASE AGREEMENT) – DISCLOSURE OF CONFIDENTIAL INFORMATION

### (DEFENDANT JERNIGAN)

117.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

118.    Pursuant to the Purchase Agreement, Jernigan is prohibited from disclosing any Coastal Confidential Information.  *See* Exhibit A, ¶ 6.4(d).

119.    In violation of the Purchase Agreement, Jernigan utilized Coastal's Confidential Information in furtherance of his own personal business, to benefit Lineco.

120.    Jernigan's disclosure and use of Coastal's Confidential Information in violation of the Purchase Agreement constitutes a breach of the Purchase Agreement.

121.    Jernigan acknowledged that breach of his contractual obligations results in

16

irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law. *See* Exhibit A, ¶ 6.4(e).

122.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

123.    As a result of this breach of the Purchase Agreement, Coastal has also suffered damages in an amount to be determined at trial.

**COUNT V**
**BREACH OF CONTRACT (SEPARATION AGREEMENT) – NON-COMPETE**
**(DEFENDANT JERNIGAN)**

124.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

125.    In his Separation Agreement with Coastal, Jernigan reaffirmed his restrictive covenants from the Purchase Agreement and "agree[d] to honor them fully".  Exhibit B, ¶ 5.5.

126.    The non-compete provision from the Purchase Agreement is therefore expressly incorporated into the terms of the Separation Agreement.

127.    The non-compete provision of the Separation Agreement is valid and enforceable.

128.    The non-compete provision of the Separation Agreement is reasonable with respect to its duration, scope, and the line of business covered by the restriction.

129.    The non-compete provision is reasonably calculated to protect Coastal's legitimate business interests which include, but are not limited to, Coastal's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

130.    Following his resignation from Coastal, Jernigan has engaged in various forms of competition with Coastal that are prohibited under the non-compete provision.

17

131.    Jernigan's wrongful competition with Coastal constitutes a breach of the Separation Agreement.

132.    Jernigan acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law.

133.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

134.    As a result of the breach of the Separation Agreement, Coastal has also suffered damages in an amount to be determined at trial.

## COUNT VI
## BREACH OF CONTRACT (SEPARATION AGREEMENT) – NON-SOLICITATION
### (DEFENDANT JERNIGAN)

135.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

136.    In his Separation Agreement with Coastal, Jernigan reaffirmed his restrictive covenants from the Purchase Agreement and "agree[d] to honor them fully".  Exhibit B, ¶ 5.5.

137.    The non-compete provision from the Purchase Agreement is therefore expressly incorporated into the terms of the Separation Agreement.

138.    Pursuant to the Separation Agreement, Jernigan is also prohibited from directly or indirectly soliciting or encouraging Coastal customers to change, cease or terminate their relationship with Coastal.  *See* Exhibit B, ¶ 5.5.

139.    The customer non-solicitation provision of the Separation Agreement applies for a period of two years following Jernigan's termination.  *See id.*

140.    The customer non-solicitation provision of the Separation Agreement is valid and enforceable.

141.    The customer non-solicitation provision of the Separation Agreement is reasonable with respect to its duration, scope, and the line of business covered by the restriction.

142.    The customer non-solicitation provision is reasonably calculated to protect Coastal's legitimate business interests which include, but are not limited to, Coastal's trade secrets, confidential business information, and its substantial relationships with its existing and prospective customers.

143.    Following his resignation from Coastal, Jernigan has engaged in various forms of customer solicitation that are prohibited under the customer non-solicitation provision of the Separation Agreement.

144.    Jernigan's wrongful competition with Coastal constitutes a breach of the Separation Agreement.

145.    Jernigan acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law.

146.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

147.    As a result of the breach of the Separation Agreement, Coastal has also suffered damages in an amount to be determined at trial.

## COUNT VII
## BREACH OF CONTRACT (SEPARATION AGREEMENT) – CONFIDENTIAL INFORMATION USE/DISCLOSURE

### (DEFENDANT JERNIGAN)

148.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

149.    Pursuant to the Separation Agreement, Jernigan is prohibited from disclosing any Coastal Confidential Information to anyone other than Coastal except for the purposes of carrying out his duties within the scope of his employment with Coastal.  *See* Exhibit B, ¶ 5.4.

150.    Pursuant to the Separation Agreement, Jernigan is also prohibited from using the Confidential Information in furtherance of his personal business or the business of anyone else in competition with the Company. *See id*.

151.    In violation of the Separation Agreement, Jernigan utilized Coastal's Confidential Information in furtherance of his own personal business.

152.    Jernigan's disclosure and use of Coastal's Confidential Information in violation of the Separation Agreement constitutes a breach of the Separation Agreement.

153.    Jernigan acknowledged that breach of his contractual obligations results in irreparable harm and continuing damages to Coastal, for some of which Coastal will have no adequate remedy at law. *See* Exhibit B, ¶ 5.3.

154.    Coastal is entitled to injunctive relief to prevent further violations of the restrictive covenants, including but not limited to the non-compete, non-solicitation, and confidentiality provisions in the Purchase Agreement and Separation Agreement.

### COUNT VIII
### BREACH OF COMMON LAW EMPLOYEE DUTY OF LOYALTY

### (DEFENDANT JERNIGAN)

155.    Coastal incorporates all of the foregoing allegations as if fully set forth herein

156.    Jernigan held a high-level, executive position at Coastal acting as its President for several years.

157.    When Jernigan was Coastal's executive, he owed Coastal a duty of loyalty, good faith, and trust, which included, but was not limited to, a duty not to engage in disloyal acts in anticipation of future competition, such as misusing confidential information acquired during his employment or soliciting customers and other employees prior to the end of his employment with Coastal.

158.    Jernigan breached his duty of loyalty to Coastal by, among other things, engaging in the following activities while still employed with Coastal:

      a.    Performing work or engaging in other activities to benefit himself and Lineco; and

      b.    Using, disclosing, and/or misappropriating Coastal's protected confidential and trade secret information to benefit himself and Lineco;

      c.    Soliciting Coastal employees to benefit himself and Lineco; and

      d.    Soliciting Coastal customers to benefit himself and Lineco.

159.    As a result of Jernigan's willful breach of his duty of loyalty, Coastal has suffered and will continue to suffer damages in the forms of wages and benefits paid to, but not earned by, Jernigan; lost business; lost revenue; lost goodwill; lost employees; lost customers; compensatory damages; and/or other immeasurable, unquantifiable, and irreparable injuries.

160.    Consequently, Coastal seeks punitive and other damages.

## COUNT IX
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## (UNDER FLORIDA LAW)

### (ALL DEFENDANTS)

161.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

162.    During Jernigan's employment with Coastal, Jernigan improperly used Coastal's customer list to meet with Coastal's customers on behalf of Lineco and compete with Coastal, thereby tortiously interfering with Coastal's business relationships with its customers.

163.    Jernigan used his position to meet with Coastal customers who had an existing business relationship and/or contracts with Coastal and willfully used Coastal's confidential information and trade secrets to wrongfully compete with Coastal.

164.    Jernigan knew that Georgia Power was prepared to enter into a business relationship with Coastal, but he met with Georgia Power representatives on behalf of Lineco and dissuaded them from working with Coastal, claiming that Lineco could provide them the services that they were looking for.

165.    Jernigan and Lineco were acting with malice and the intent to undermine and dismantle Coastal's customer relationships, clearing their own way to take that business away from Coastal.

166.    Coastal suffered and will continue to suffer immediate and irreparable damage as a result of Defendants' conduct.

167.    Coastal is entitled to injunctive relief to prevent Lineco from continuing to interfere with its business and from wrongfully competing with Coastal.

## COUNT X
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (UNDER FLORIDA LAW)

### (ALL DEFENDANTS)

168.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

169.    During his employment with Coastal, Jernigan communicated with Georgia Power, on behalf of Lineco, with the knowledge of a business opportunity with Georgia Power and its parent company, Southern Company.

22

170. Jernigan, on behalf of Lineco, met with employees of Georgia Power to obtain contracts for Lineco instead of Coastal.

171. Defendants acted with malice and the intent to undermine and dismantle Coastal's relationship with Georgia Power, clearing their own way to take that business away from Coastal.

172. Coastal suffered and will continue to suffer immediate and irreparable damage as a result of Defendants' conduct.

173. Coastal is entitled to injunctive relief to prevent Lineco from continuing to interfere with its business and from wrongfully competing with Coastal.

## COUNT XI
## UNFAIR COMPETITION
## (UNDER FLORIDA LAW)

### (ALL DEFENDANTS)

174. Coastal incorporates all of the foregoing allegations as if fully set forth herein.

175. Coastal's confidential, proprietary and trade secret information, as described herein, was created by Coastal through extensive time, labor, skill, and money.

176. Upon information and belief, Jernigan, acting on behalf of Lineco, obtained Coastal's confidential, proprietary and trade secret information, as described herein, and wrongfully used the information to actively and directly compete with Coastal.

177. Jernigan and Lineco's wrongful use and acquisition of Coastal's confidential, proprietary and trade secret information has provided Defendants a special advantage and a free ride because Defendants are burdened with little or none of the expense incurred by Coastal in developing its confidential, proprietary and trade secret information or in obtaining and converting Coastal's assets.

178.    As a result of Defendants' unfair competition, Coastal has suffered substantial commercial damage and harm for which it is entitled to collect damages, including punitive damages.

179.    Defendants' conduct was intentional, willful, and outrageous, and was undertaken with indifference to the rights of Coastal.

180.    In addition, Coastal has suffered and will continue to suffer harm, including the loss of customers, loss of potential customers, loss of goodwill and other tangible assets, as well as the unauthorized disclosure of its confidential, proprietary, and confidential trade secret information for which Coastal is entitled to injunctive relief.

## COUNT XII
## FRAUDULENT MISREPRESENTATION
## (UNDER FLORIDA LAW)

### (DEFENDANT JERNIGAN)

181.    Coastal incorporates all of the foregoing allegations as if fully set forth herein.

182.    During his dealings with Coastal and as Coastal's executive, Jernigan failed to disclose material facts to Coastal, including his role at Lineco and the competitive nature of Lineco's business, which he had a duty to disclose.

183.    These omissions were made with the intent to deceive Coastal, preventing it from making fully informed decisions regarding its business relationships and protecting its interests.

184.    Coastal, unaware of Jernigan's operations of Lineco at the time, relied on Jernigan's continued performance of his executive work for Coastal with the assumption he was acting in Coastal's best interest – not Lineco's.

185.    Meanwhile, Jernigan operated Lineco in competition with Coastal and planned to take over Coastal's business.

186.    Jernigan was also misrepresenting Coastal's position in the market, knowing that his statements would cause customers to divert their business to Lineco.

187.    Coastal reasonably relied on Jernigan – its executive – working to further its business and not Lineco's.

188.    Jernigan knew that his actions would prevent Coastal from acting to preserve its business relationships and that this omission would cause harm.

189.    Coastal suffered economic harm in the form of lost contracts and the erosion of Coastal's customer base when those customers were evidently misled into switching to Lineco.

190.    Coastal has also suffered ongoing damage to its reputation and market position.

## PRAYER FOR RELIEF

WHEREFORE, Coastal respectfully requests that the Court enter judgment against Defendants:

1.    Ordering that Defendants comply with the provisions of the Purchase Agreement pending resolution of this action;

2.    Directing Defendants to return to Plaintiff any and all of Coastal's trade secrets in their custody and control;

3.    Enjoining Defendants from soliciting Coastal customers;

4.    Enjoining Defendants from soliciting Coastal employees, contractors or agents;

5.    Enjoining Defendants from disclosing confidential information, trade secrets, and other sensitive information;

6.    Enjoining Defendants from competing against Coastal;

7.    Requiring Defendants to provide Coastal with a full accounting of the profits they obtained due to their wrongful conduct;

8.      Awarding Coastal ten million dollars ($10,000,000) as compensatory damages for Defendants' illegal acts, and awarding Coastal at least fifty million dollars ($50,000,000) as punitive and other damages for the violations outlined above;

9.      Awarding Coastal pre- and post-judgment interest;

10.     Awarding Coastal its attorneys' fees and costs; and

11.     Awarding Coastal all other relief to which it may be justly entitled.

## DEMAND FOR TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

Respectfully submitted this 22nd day of October, 2025.

**REED SMITH LLP**

*/s/ Benjamin P. Chapple*
Benjamin P. Chapple
Bar No. 5871
1201 North Market Street
Suite 1500
Wilmington, DE 19801-1163
T: +1 302 778 7500
F: +1 302 778 7575
bchapple@reedsmith.com

David W. Long-Daniels*
Georgia Bar No. 141916
999 Peachtree Street NE
Suite 2500
Atlanta, GA 30309
T: +1 470 947 5800
F: +1 470 947 5799
Dlong-daniels@reedsmith.com

*Application *Pro Hac Vice* forthcoming

*Attorneys for Plaintiff*

26